UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GURJEET SINGH,

Petitioner,

-against-

IMMIGRATION AND CUSTOMS ENFORCEMENT, in their official capacity, *et al.*,

Respondents.

26-CV-5202 (VSB)

**OPINION & ORDER**

Appearances:

Mohammad Akif Saleem
Davis Ndanusa Ikhlas & Saleem LLP
Brooklyn, NY
*Counsel for Petitioner*

Tudor M Neagu
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

Before me is Gurjeet Singh's ("Petitioner" or "Singh") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking an order directing the Government to immediately release him from custody or, in the alternative, grant him a bond hearing. (Doc. 1 ("Petition" or "Pet.").) For the reasons set forth below, the Petition is GRANTED IN PART, and the Government is ordered to provide Petitioner with an individualized bond hearing to determine if his continued detention is justified.

## I. Factual and Procedural Background

### A. *Petitioner's Entry Into the United States*

Petitioner is a 28-year-old citizen of India who has resided in the United States for over eight years since his entry into the country. (Doc. 11-1 at 2–3; Doc. 12 ("Rousseau Decl.") ¶¶ 3–4.) Singh is married and has two children who are U.S. citizens. (Doc. 11-1 at 4.) On or around November 30, 2017, Singh encountered United States Customs and Border Protection ("CBP") officials near Calexico, California after he had unlawfully entered the United States through the southern border. (Rousseau Decl. ¶ 4.) On December 3, 2017, a Border Patrol officer issued an expedited removal order based on Petitioner's inadmissibility pursuant to Section 2l2(a)(7)(A)(i)(l) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.* ¶ 5.)

After Petitioner claimed a fear of returning to India, on December 18, 2017, he was interviewed by an asylum officer from U.S. Citizenship and Immigration Services ("USCIS"), who determined that Petitioner had a credible fear of returning to India based on persecution or torture. (*Id.* ¶ 6.) Later that same day, ICE issued and served Petitioner a Notice to Appear ("NTA"). (*Id.*) The NTA has three check boxes to designate a noncitizen in removal proceedings, including: "arriving alien," "alien present in the United States who has not been admitted or paroled," or noncitizens who "have been admitted to the United States, but are removable for reasons stated below" in the form. (Doc. 11-2 at 2.) Petitioner was designated as an "alien present in the United States who has not been admitted or paroled." (*Id.*) The NTA charged Singh as inadmissible pursuant to INA § 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), due to inadequate documentation "at the time of application for admission"; and inadmissible under INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), as a

noncitizen "present in the United States without being admitted or paroled," or one "who has arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.*; Rousseau Decl. ¶ 6.) The following day, on December 19, 2017, ICE filed the NTA with the Immigration Court, thereby placing Petitioner in full removal proceedings pursuant to 8 U.S.C. § 1229a, where he could pursue his defensive asylum claim. (Rousseau Decl. ¶ 7.)

### B. *Petitioner's Immigration Court Proceedings*

On January 23, 2018, an Immigration Judge released Petitioner from custody with a bond of $10,000 and "[Alternatives to Detention] at DHS['s] discretion." (*Id.* ¶ 8; Doc. 11-3.) This notice stated that the determination had been made "[p]ursuant to 8 CFR 236.1(c)." (Doc. 11-3 at 2.) On January 31, 2018, Petitioner was released pursuant to an Order of Release on Recognizance, Form I-220A ("OREC"), and directed to report to the New York Alternative to Detention Unit on February 7, 2018. (Rousseau Decl. ¶ 9; Doc. 11-4 at 2.) The January 31 OREC clarified that Petitioner was released in accordance with INA § 236, codified at 8 U.S.C. § 1226, and explained that he was "being released on [his] own recognizance." (Doc. 11-4 at 2.) The OREC required, among other things, that Petitioner "not violate any local, State or Federal laws or ordinances." (Doc. 11-4 at 2; *see also id.* at 4 (requiring that Petitioner "not commit any crimes while on this [OREC]").) On February 2, 2018, Petitioner filed a motion for change of venue to the New York City Immigration Court, which was granted on February 13, 2018. (Rousseau Decl. ¶¶ 10–11.)

On April 9, 2018, Petitioner filed an asylum application, and on March 25, 2020, Petitioner appeared for a master calendar hearing in Immigration Court with counsel. (*Id.* ¶¶ 12–

13.) Although the case was scheduled for a merits hearing on December 2, 2020, that hearing was cancelled. (*Id.* ¶¶ 13–14.)

On May 18, 2021, the Port Authority of New York-New Jersey Police Department arrested Petitioner in Staten Island, New York and charged him with: (1) driving while intoxicated pursuant to New York Vehicle Traffic Law ("N.Y. V.T.L.") § 1192(3); (2) operating of a motor vehicle with a .08 % blood alcohol content, or more, pursuant to N.Y. V.T.L. § 1192(2); (3) per se aggravated driving while intoxicated with a blood alcohol content of 0.18 %, or more, pursuant to N.Y. V.T.L. § 1192(2); and (4) driving while ability impaired by the consumption of alcohol pursuant to N.Y. V.T.L. § 1192(1). (*Id.* ¶ 15; Doc. 11-5 at 5.) On March 24, 2023, Petitioner was convicted upon a guilty plea of violating N.Y. V.T.L. § 1192, a misdemeanor, for operating a motor vehicle with a 0.08 % alcohol or more in blood. (*Id.* ¶ 16; Doc. 11-5 at 5.) He was sentenced to a conditional discharge, with a six-month suspension of his license, a $1000 fine (which he paid in full), and an alcohol abuse program. (Doc. 11-5 at 6.)

On July 17, 2024, an individual immigration merits hearing was conducted, and the Immigration Court denied all forms of relief and ordered Petitioner removed. (Rousseau Decl. ¶ 18; Doc. 11-6.) Shortly thereafter, on August 5, 2024, Petitioner appealed the removal order, which still remains pending. (*Id.* ¶ 18.)

### C. *Petitioner's Arrest and ICE Detention*

On June 10, 2026, the Nassau County Police Department arrested Petitioner and charged him with, among other things, Assault in the Second Degree pursuant to New York Penal Law ("N.Y.P.L.") § 120.05, Menacing in the Second Degree with a Weapon pursuant to N.Y.P.L. § 120.14, and Criminal Mischief in the Second Degree, N.Y.P.L § 145.10. (*Id.* ¶ 19; Doc. 11-5 at 4, 8.) According to the arrest report for the § 145.10 charge, Petitioner was involved in a "verbal

argument over marijuana" and was upset that another individual "would not give money for marijuana." (Doc. 11-5 at 10.) Petitioner "hit the Victim's car with a small battery," "causing 2 big holes in the front windshield." (*Id.*) Moreover, both car mirrors were broken off the vehicle. (*Id.*) The report also notes that Petitioner was armed with a "[c]utting/[s]tabbing instrument," and that he made a statement, indicating that he "accidentally stabbed them in the arm." (*Id.*) Petitioner pleaded not guilty to these charges, which remain pending. *See* Docket Sheet, CR-011537-26NA, Nassau District Court.

Two days later, on June 12, 2026, ICE cancelled Petitioner's OREC. (Rousseau Decl. ¶ 20; Doc. 11-7 at 2, 4.) The same day, ICE also issued a Warrant for Arrest of Alien, Form I-200, for Petitioner's arrest. (Rousseau Decl. ¶ 20; Doc. 11-8.) This arrest warrant authorizes arrest "pursuant to section[] 236 . . . of the Immigration and Nationality Act," codified at 8 U.S.C. § 1226. (Doc. 11-8 at 2.) Additionally, ICE lodged an Immigration Detainer, Form I-247A ("Immigration Detainer"), with the Nassau County Correctional Center ("NCCC"), seeking to detain Petitioner upon his release from state criminal custody. (Rousseau Decl. ¶ 20; Doc. 11-9.) On June 17, 2026, ICE cancelled Petitioner's previous immigration bond, and upon the grant of his bail and release from criminal custody from the Nassau County Correctional Center, detained and transported him to the Nassau County ICE intake. (Rousseau Decl. ¶¶ 21–22.) In cancelling his previous bond and re-detaining Petitioner, the Government did not provide any individualized determination or bond hearing. (Doc. 13 ("Opp'n") at 9–12.)

On June 18, 2026, ICE transported Petitioner to the New York City Hold Room at 26 Federal Plaza. (Rousseau Decl. ¶ 23.) Four days later, on June 22, 2026, Petitioner was transferred to Orange County Jail in Goshen, New York. (*Id.* ¶ 26.) Petitioner is currently detained at the Metropolitan Detention Center in Brooklyn, NY. (*See* Doc. 16.) Petitioner's next

conference for his criminal case is scheduled for September 21, 2026. *See* Docket Sheet, CR-011537-26NA, Nassau District Court.

**D. *This Instant Habeas Petition***

Singh filed the Petition, along with a Proposed Order to Show Cause, (Doc. 2), on June 19, 2026. On June 20, 2026, Judge P. Kevin Castel, sitting as the Part I judge, issued an Order to Show Cause and Temporary Restraining Order enjoining Respondents from removing Petitioner from the Southern District of New York. (Doc. 6.) On June 22, 2026, after this case was assigned to me, I issued an order to show cause mandating that Petitioner not be removed from the United States unless and until I ordered otherwise and setting an initial telephonic conference. (Doc. 9.) On June 24, 2026, the parties appeared before me for an initial telephonic case conference and confirmed that venue was proper in this district.

On June 30, 2026, Respondents filed their opposition brief, (Doc. 13), along with a declaration of ICE Deportation Officer Dmitry Rousseau, (Doc. 12), and a response to the Petition, (Doc. 11), which attached nine exhibits: (1) Form I-213, Record of Deportable/Inadmissible Alien, (Doc. 11-1); (2) Form I-862, Notice to Appear, (Doc. 11-2); January 23, 2018 Immigration Judge Order Granting Bond, (Doc. 11-3); (4) Form 1-220A, January 31, 2018 Order of Release on Recognizance, (Doc. 11-4); (5) New York Electronic Criminal Records, (Doc. 11-5); (6) July 17, 2024 Removal Order, (Doc. 11-6); (7) June 12, 2026 Cancellation of Release, (Doc. 11-7); (8) Form I-200, Warrant for Arrest of Alien, (Doc. 11-8); and (9) Form I-247A, June 12, 2026 Immigration Detainer, (Doc. 11-9). In their brief, Respondents argue that Petitioner is mandatorily detained under Section 1225(b)(1)(B)(ii), so he is not entitled to a bond hearing. (*See generally* Opp'n.) On July 6, 2026, Petitioner filed his reply. (Doc. 14.)

Having reviewed the Petition, the materials filed in support thereof, and the parties' further filings, I find that the Petition "present[s] only issues of law," and I thus issue the instant Opinion & Order and adjudicate the Petition without a hearing in light of my obligation to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require." 28 U.S.C. § 2243.

## II. **Legal Standard**

28 U.S.C. § 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States,'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)), including claims by non-citizens challenging their detention without bail, *see Demore v. Kim*, 538 U.S. 510, 516–17 (2003). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore*, 538 U.S. at 516–17).

## III. **Discussion**

The Petition raises questions previously answered by other judges in this district and my own decision in *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 376 (S.D.N.Y. 2026), including: (1) whether Singh, who has resided in the United States for over eight years at the time of his arrested, is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(1) ("§ 1225" or "§ 1225(b)"),

which requires mandatory detention, or whether he is detained under 8 U.S.C. § 1226(a) ("§ 1226" or "§ 1226(a)"), which provides for discretionary authority to detain other noncitizens who are "already in the country," "pending a decision on whether [they are] to be removed from the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018) (citing 8 U.S.C. § 1226); and (2) whether Petitioner's detention without an individualized determination or bond hearing violates the Due Process Clause. Consistent with my holding in *Sidqui*, I find that Singh is detained under the discretionary detention statute of 8 U.S.C. § 1226(a) and the Government's failure to give Petitioner an individualized bond hearing violates his due process rights.

### A. *Petitioner is Detained Pursuant to Section 1226(a)*

There are two detention statutes relevant to this case pending a final order removal: § 1225(b)(1), a mandatory detention statute, and § 1226(a), a discretionary detention statute.[1] "Section 1225(b)(1) sets forth a type of deportation procedure known as 'expedited removal.'" *Nimaga v. Francis*, No. 26-CV-2868, 2026 WL 1656049, at *4 (E.D.N.Y. June 8, 2026) (citing 8 U.S.C. § 1225(b)(1)). Compared to "usual" removal proceedings under 8 U.S.C. § 1229a ("Section 1229a"), expedited removal "substantially shorten[s] and speed[s] up the removal process." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 291 (E.D.N.Y. 2025) (quoting *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020)), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). "[U]nder Section 1225(b)(1), people subject to expedited removal are [also] subject to mandatory detention." *Id.* at 293.

---

[1] Although an Immigration Judge ordered Singh removed on July 17, 2024, the section governing post-removal detention, 8 U.S.C. § 1231, does not apply until "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). "An immigrant court removal order becomes final after dismissal of an appeal to the BIA or upon waiver of the right to appeal." *Cruz v. Decker*, No. 18-CV-9948, 2019 WL 7572975, at *1 n.1 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019). Because Petitioner's appeal to the BIA is still pending, the removal order is not yet "administratively final," meaning that he remains detained under the pre-removal statutory frameworks.

In order for Section 1225(b)(1) to apply, several requirements must be met. First, the noncitizen must be deemed "inadmissible" under 8 U.S.C. § 1182(a)(6)(C) or (a)(7). 8 U.S.C. § 1225(b)(1)(A)(i). "Second, the noncitizen must either (1) be 'arriving in the United States,' or (2)(a) 'not have been admitted or paroled into the United States,' (b) 'not have affirmatively shown . . . that they have been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility,' and (c) be 'designated' for mandatory detention and expedited removal by the Attorney General." *Nimaga*, 2026 WL 1656049, at *4 (E.D.N.Y. June 8, 2026) (quoting 8 U.S.C. § 1225(b)(1)(A)(iii)(I–II)) (alterations adopted). If a noncitizen placed in expedited removal proceedings "indicates either an intention to apply for asylum . . . or a fear of persecution," that noncitizen is referred "for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). If an immigration officer determines that the individual has a credible fear of persecution, § 1225(b)(1)(B)(ii) states that the noncitizen "shall be detained for further consideration of the application of asylum." *Id.* § 1225(b)(1)(B)(ii). "The only avenue for release is DHS's discretion to release the noncitizen based on humanitarian reasons or the public good." *M.K. v. Arteta*, No. 25-CV-9918, 2025 WL 3720779, at *6 (S.D.N.Y. Dec. 23, 2025).

On the other hand, section 1226(a) is generally understood as the "default rule" which applies to noncitizens "already present in the United States," i.e., no longer at the border, *Jennings*, 583 U.S. at 303, and provides that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States," § 1226(a). *See Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "also authorizes the Government to detain certain aliens already in the country pending the outcome of removal

proceedings under §§ 1226(a) and (c))”; *see also id.* at 288 (“[O]nce inside the United States . . . an alien present in the country may still be removed” under “Section 1226”). “Pending such decision,” the Attorney General (1) “may continue to detain the arrested alien” or (2) “may release” the noncitizen on bond or “conditional parole.” § 1226(a)(1)–(2). Thus, § 1226(a) establishes a discretionary detention framework “and, if detained, a noncitizen may then request a bond hearing before an immigration judge, where the noncitizen may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.” *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025) (internal quotation marks omitted).

The Government argues that Petitioner is mandatorily detained under § 1225(b)(1)(B)(ii) because Singh is an “applicant for admission” to the United States, and because he was initially detained under § 1225(b)(1)(B)(ii) in 2017 and placed into expedited removal proceedings, he continues to be subject to that provision’s mandatory detention requirement until his asylum application is fully adjudicated. (Opp’n 7–8.) I disagree. As I held in *Sidqui*, “where the Government has continuously treated Petitioner pursuant to § 1226(a),” and released him on bond under § 1226(a) after his initial period of expedited removal, they cannot post-hoc characterize his detention as mandatory under § 1225(b)(1). 823 F. Supp. 3d at 383–384 (rejecting argument that “because [p]etitioner was initially detained under § 1225(b)(1)(B)(ii) . . . he continue[d] to be subject to that provision’s mandatory detention requirement until his asylum application [wa]s fully adjudicated,” where petitioner “was not paroled under the singular parole exception to § 1225 . . . , the [a]rrest [w]arrant was issued subject to § 1226, and [p]etitioner was detained on that basis” and thus “the [g]overnment ha[d] continuously treated [p]etitioner pursuant to § 1226(a)” (collecting cases)).

In this regard, I am not alone. Courts in this District have rejected Respondents' argument on similar facts, and I likewise reject them here. *See, e.g.*, *Hanson v. Joyce*, No. 1:26-CV-03326, 2026 WL 2058445, at *3–4 (S.D.N.Y. July 16, 2026) (finding that petitioner was detained under Section 1226(a), not Section 1225(b)(1), because she was released on her own recognizance under Section 1226 after she was initially placed into expedited removal proceedings, and her arrest warrant re-detaining her invoked Section 1226); *M.K.*, 2025 WL 3720779, at *7–8 (S.D.N.Y. Dec. 23, 2025) (holding that petitioner was detained under Section 1226(a) rather than 1225(b)(1)(B)(ii) after petitioner was released on his own recognizance, in accordance with section 236 of the INA, despite initially being placed in expedited removal proceedings); *Quinteros Moran v. Joyce*, No. 25-CV-09645, 2025 WL 3632895, at *3 (S.D.N.Y. Dec. 15, 2025) (rejecting argument that Section 1225(b)(1)(B)(ii) authorized re-detention of petitioner released on bond under § 1226(a) years before, where the government issued warrant for petitioner's arrest "pursuant to § 1226(a)" and "again invoked § 1226(a)" after apprehending petitioner, reasoning that the government had "neglected any authority it may have possessed under § 1225(b) and consistently applied § 1226(a). 'It cannot now turn back the clock, and neither can the [c]ourt.'" (quoting *Loja v. FCI Berlin, Warden*, 808 F. Supp. 3d 227, 230 (D.N.H. 2025))). These opinions rest on the same fundamental legal principles that I, and several others in this District and Circuit, have repeatedly applied when adjudicating challenges to the detention of noncitizens. "Section 1225 generally applies to 'arriving' noncitizens, and that word does not describe those who, like Petitioner, are already present in the United States because ICE released them on their own recognizance after initially detaining them at or near the border." *Hanson*, 2026 WL 2058445, at *4 (collecting cases); *see also, e.g.*, *Rivera Esperanza v. Francis*, 817 F. Supp. 3d 187, 195–96 (S.D.N.Y. 2025) (explaining that "arriving" refers to a noncitizen who is

"an applicant for admission coming or attempting to come into the United States at a port-of-entry," noting that petitioner's NTA "clearly states that he is 'a [noncitizen] present in the United States who has not been admitted or paroled,' and not an 'arriving [noncitizen],'" and concluding that his re-detention was governed by Section 1226 and not Section 1225); *Han v. Noem*, 824 F. Supp. 3d 383, 391 (S.D.N.Y. 2026) (noting that when ICE re-detained petitioner, it understood his "detention to be governed by § 1226 not § 1225(b)[]" because he was released on his recognized under § 1226 and issued an arrest warrant pursuant to § 1226"). "When the government consistently treats a noncitizen as subject to Section 1226 over a period of months or years, it cannot later change its mind and apply Section 1225 to justify their re-detention." *Hanson*, 2026 WL 2058445, at *4 (collecting cases). The Second Circuit reaffirmed this principle in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), explaining that the use of a present participle like "arriving" or, in that case, "seeking," "denotes the verb's action as being in progress or incomplete at the time expressed by the sentence's principal verb." *Id.* at 77 (quoting The Chicago Manual of Style ¶ 5.114 (18th ed. 2024)). In other words, when the INA uses the phrase "arriving," it refers to a noncitizen who is arriving "right now," not a noncitizen who has been present for years in the United States, like Singh. *See id.* (citing *Carr v. United States*, 560 U.S. 438, 448 (2010)).

Here, consistent with my holding in *Sidqui*, I find that Section 1226(a) governs Petitioner's current detention. Respondents' argument that Petitioner is detained under § 1225(b)(1)(B)(ii) is clearly belied by the record in this case, which demonstrates that the Government has continuously treated Petitioner as detained pursuant to § 1226(a). *See Sidqui*, 823 F. Supp. 3d at 383; *see also Quinteros Moran*, 2025 WL 3632895, at *3 (rejecting the Government's argument that the petitioner was detained pursuant to 1225(b)(1)(B)(ii) and

determining that he was instead "detained under § 1226(a)" because "[s]ince Petitioner's initial release on bond in 2013, the Government has exclusively invoked § 1226(a) in its dealings with Petitioner").

First, after Petitioner was found to have a credible fear of returning to India, he was immediately placed into non-expedited removal proceedings under 8 U.S.C. § 1229a to pursue a defensive asylum application, (Rousseau Decl. ¶ 6), and served with an NTA categorizing him as a noncitizen "present in the United States who has not been admitted or paroled," (Doc. 11-2), rather than continuing to be treated as detained under expedited removal proceedings under § 1225(b)(1)(B)(ii). Subsequently, "the Government elected to release Petitioner on bond pursuant to § 1226(a)." *Quinteros Moran*, 2025 WL 3632895, at *3; Doc. 11-3. In fact, Singh's OREC specifically states that its release authority is pursuant to Section 236 of the INA, codified by § 1226. (Doc. 11-4.) "Thus, if DHS believed that Petitioner was subject to § 1225(b)(1)(B)(ii), DHS would have continued detaining him after USCIS made the credible fear determination and DHS issued the NTA." *Sidqui*, 823 F. Supp. 3d at 384. "DHS's decision to release an individual on bond, as opposed to humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), [an exception allowing for release under § 1225(b),] constitutes strong evidence that DHS intended to detain the individual under § 1226(a) and not under § 1225(b)." *Id.* (internal quotation marks omitted); *Villegas ex rel. Guzman Andujar v. Francis*, 815 F. Supp. 3d 248, 259 (S.D.N.Y. 2025), *appeal withdrawn sub nom. Villegas ex rel. Guzman Andujar v. Genalo*, No. 26-157, 2026 WL 1133137 (2d Cir. Feb. 10, 2026) (The petitioner "was never paroled under § 1225. Noncitizens detained following inspection under § 1225 can only be paroled into the United States for urgent humanitarian reasons or significant public benefit. [The petitioner] was instead released on his own recognizance under § 1226(a)." (internal citation omitted)).

Moreover, eight years after Petitioner's release on bond, when the Government issued a warrant for Petitioner's detention after his June 10, 2026 arrest, it did so pursuant to 1226(a). (Doc. 11-8 (allowing for any immigration arrest "to serve warrants of arrest for immigration violations" pursuant to INA Section 236, or § 1226).) In other words, Respondents have "exclusively invoked" Section 1226 in their "dealings with" Petitioner up to this point, *Quinteros Moran*, 2025 WL 3632895, at *3, and only now invoke Section 1225. Following my decision in *Sidqui*, and in line with other courts in this District, I reject Respondents' similarly belated applications of Section 1225(b)(1)(B)(ii) and find here, too, that Petitioner is not currently detained under Section 1225. *See Sidqui*, 823 F. Supp. 3d at 383; *Hanson*, 2026 WL 2058445, at *3–5; *M.K.*, 2025 WL 3720779, at *7–8; *Quinteros Moran*, 2025 WL 3632895, at *3–4.

In sum, Petitioner is not mandatorily detained under Section 1225(b)(1), but rather subject to discretionary detention under Section 1226(a).

**B. *Due Process***

Next, I evaluate whether, in detaining Petitioner under § 1226(a), the Government violated Petitioner's due process rights. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted). The procedural due process requirement applies to deportation proceedings for non-citizens as well. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Therefore,

although ICE has some discretion in determining whether to detain a noncitizen under § 1226(a), due process "still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025).

Here, it is clear that Petitioner was afforded no process whatsoever. The Government has not provided an initial determination nor a bond hearing, since they argue that Singh is detained pursuant to Section 1225(b)(1)(B)(ii). (Opp'n 9–13, 16–20.) "These procedural protections matter," and "[t]hey are not mere technicalities." *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025). Thus, in not providing any such process to Singh, (*see* Doc. 13 at 9–10), I find that ICE violated Petitioner's due process rights.

### C. ***Remedy***

The only remaining question I must evaluate is the proper remedy for Singh. Petitioner argues that his immediate release is proper, or in the alternative, requests a constitutionally adequate bond hearing. (Pet. 2–3.) Respondents, relying on their assertion that Section 1225(b)(1)(B)(ii) provides the basis for Petitioner's detention, offer no argument as to the proper remedy in the event that I disagree with their detention basis. I decline Petitioner's invitation to order his immediate release and find that bond is the appropriate remedy. While the current record does not support a conclusion that Petitioner was afforded any process or individualized determination before his detention, as required under § 1226(a), the fact that Petitioner's immigration re-detention was premised on a criminal arrest and detainer, with still-pending charges, "suggests that the Government may have made such a determination, and it may have had reasonable grounds to do so." *Quinteros Moran*, 2025 WL 3632895, at *4 (denying release and granting bond after determining that petitioner was detained under § 1226(a) and not § 1225(b)(1), because "the fact that ICE lodged a detainer against Petitioner after his August 5

arrest—Petitioner's tenth arrest in three years—suggests that the Government may have made such a [individualized risk] determination [to detain him], and it may have had reasonable grounds to do so."); *Eltayeb v. Genalo*, No. 26-CV-6090, 2026 WL 2364647, at *3 (S.D.N.Y. Aug. 14, 2026) (granting a bond hearing, rather than release, for an immigration petitioner detained based on a criminal arrest).

Although I am "concerned whether [granting a bond hearing, rather than release] will provide genuine relief," because of a pattern of blanket denials of bond to noncitizens in immigration proceedings, I give the "Government the opportunity to hold a legitimate bond hearing on the merits." *Eltayeb*, 2026 WL 2364647, at *3 (S.D.N.Y. Aug. 14, 2026). "At the hearing, the Immigration Judge must make an individualized determination, and the Government must bear the burden of proof if it is seeking an order that Petitioner be detained." *Quintanilla v. Decker*, 21-CV-417, 2021 WL 707062, at *3 (S.D.N.Y Feb. 22, 2021) (holding that due process requires the Government to bear the burden of proof at a § 1226(a) bond hearing regardless of the length of detention). Shifting the burden to the Government is justified. S*ee Mathieu v. Dep't of Homeland Sec.*, 26-CV-4630, 2026 WL 1747084, at *4 (S.D.N.Y June 17, 2026) ("[N]umerous courts in this District have ordered bond hearings, with the burden shifted to the Government.").

Specifically, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Further, the immigration judge must meaningfully consider alternative conditions of release before making a determination regarding whether to set a bond—that is, the immigration judge must consider alternatives to detention that may ameliorate both risk of flight and dangerousness—and must additionally consider the Petitioner's ability to pay when setting any bond amount. *See J.C.G. v.*

*Genalo*, No. 24-CV-08755, 2025 WL 88831, at *11 (S.D.N.Y. Jan. 14, 2025) ("In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider the Petitioner's ability to pay."); *Hernandez-Aviles v. Decker*, No. 20-CV-7636, 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) ("Several other courts in this circuit have likewise found that immigration judges must examine alternatives to detention and ability to pay when determining both flight risk *and* dangerousness." (emphasis in original) (collecting cases)); *Cabrera Galdamez v. Mayorkas*, No. 22-CV-9847, 2023 WL 1777310, at *9 (S.D.N.Y. Feb. 6, 2023) ("At that [bond] hearing, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight, considering Petitioner's ability to pay for a bond and alternatives to detention."). Thus, "the following conditions must be in place at [Petitioner's] individualized bond hearing: (i) the Government must carry the burden of proof to establish by clear and convincing evidence that [Petitioner] poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring; and (iii) the IJ must meaningfully consider [Petitioner's] ability to pay if a monetary bond is set." *M.P.L. v. Arteta,* No. 25-CV-5307, 2025 WL 2938993, at *7 (S.D.N.Y. Oct. 16, 2025) (quoting *Reid v. Decker*, No. 19-CV-8393, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020) (alterations in original)).

## IV. <u>Conclusion</u>

For the reasons stated above, the Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED IN PART. The Government is ordered to provide an individualized bond hearing before an immigration judge to Petitioner to determine whether his continued detention is justified by October 2, 2026. At the bond hearing, which must be before a neutral immigration

judge, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the community that cannot be mitigated by reasonable conditions of supervision or monetary bond. "In determining whether to grant bond, the [immigration judge] shall [meaningfully] consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the [immigration judge] shall consider Petitioner's ability to pay, though it shall remain within the [immigration judge]'s discretion to determine the influence those considerations shall have on the [immigration judge]'s ultimate decision." *Tapia v. Arteta*, No. 26-CV-2527, 2026 WL 1863849, at *8 (S.D.N.Y. June 29, 2026) (quoting *O.F.C. v. Decker*, No. 22-CV-2255, 2022 WL 4448728, at *11 (S.D.N.Y. Sept. 12, 2022)).

IT IS FURTHER ORDERED that the Government shall file a status letter to update me about Petitioner's status and the outcome of the bond hearing within 7 days of its occurrence. Thus, the Government shall inform me whether or not a bond hearing has been held by October 9, 2026.

IT IS FURTHER ORDERED that, if Petitioner is granted bond, the Government is ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2). *Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025).

SO ORDERED.

Dated: September 18, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge